UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| UNITED STATES OF AMERICA | ) | 3:12-CR-239 |
|---|---|---|
| vs. | ) | |
| | ) | **ORDER** |
| STEVEN JONES (7) | ) | |

## I. INTRODUCTION

**THIS MATTER** is before the Court on Defendant's Motion for Acquittal (Doc. No. 634) and Motion for New Trial (Doc. No. 635). On February 9, 2015, the Court granted those motions in part to the extent Defendant sought additional time to review the trial transcripts once they were completed. (*See* Doc. No. 861). Those transcripts having been completed, and the parties' supplemental briefs having been filed, these matters are now ripe for disposition.

## II. BACKGROUND

On July 26, 2012, a Grand Jury charged Defendant Steven Jones and a number of co-conspirators in a seventy-five page Bill of Indictment. Defendant Jones was charged with one count of securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff (Count Two), one count of wire fraud scheme to defraud investors in violation of 18 U.S.C. § 1343 (Count Four), and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count Five).

On April 18, 2013, the Grand Jury returned a Superseding Indictment, charging Defendant Jones with one count of racketeering conspiracy in violation of Title 18 U.S.C. § 1962(d) (Count One) in addition to Counts Two, Four, and Five. The Superseding Indictment, now eighty-four pages long, describes the nature of an alleged $75 million RICO Enterprise that operated from 2005 until 2012. Included in the Indictment are numerous examples of securities fraud, bank fraud,

mortgage fraud, and money laundering. The Superseding Indictment specifically identifies Jones as a promoter for the Enterprise's investment fraud operations and offers an example of his alleged fraudulent conduct, which included inducing a victim to invest millions of dollars in a fraudulent account, promising outrageous returns, misappropriating the money from the account, and fraudulently misrepresenting the amount of money in the account.

On March 3, 2014, the Court preemptively set Defendant Jones for trial to begin June 23, 2014. The parties do not dispute that, over two weeks before the trial was to begin, the Government sent counsel for Defendant a copy of the draft exhibit list it intended to use at trial. (*See* Doc. No. 646-1). On June 22, the Government filed its trial exhibit list (Doc. No. 615), which was nearly identical to the list sent to Defendant on June 6, 2014. The Government's list[1] was loaded, along with the Government's exhibits, into the Western District's Jury Evidence Recording System (hereinafter "JERS"), which this district uses to electronically present to the jury exhibits received into evidence.

Trial commenced on June 23, 2014. The Government called seven witnesses, read into the record portions of Defendant's Grand Jury testimony, and introduced numerous exhibits. Defendant moved for a judgment of acquittal at the close of the Government's evidence, which was denied. Defendant called five witnesses before resting. The Court charged the jury on the third day of trial, and the deliberations continued into the next day. The following morning, the jury sent a note to the Court requesting "a hard copy of the evidence list to make it easier to choose from" and specified that "[m]ultiple copies would be great," apparently referring to the JERS exhibit list

---

[1] Defendant correctly notes that the exhibit lists used for trial and the exhibit lists used for JERS are formatted differently. The trial exhibit lists, per this Court's Administrative Procedures Governing Filing and Service by Electronic Means ("Administrative Order") § IV.B., must include a brief description for each exhibit, as well as information regarding objections and stipulations of admissibility and authenticity. The JERS exhibit list, however, contains only the exhibit number (along with an abbreviation for the party that offered it), and an "optional" description of the exhibit.

which was available to the jury electronically. Defendant objected to a hard-copy list being sent back to the jury, noting "the commentary behind the exhibit." (Trial Transcript at 657; Doc. No. 903 at 4). The Court agreed not to provide a hard copy of the list, and to instruct the jury that "no such list is available." (Trial Tr. at 657-59). Defendant then objected to that list also being available electronically. (Trial Tr. at 657-58). The Court overruled the objection, noting that the exhibit descriptions to which he objected had been furnished to him "a considerable time ago with the exhibit list," (Trial Tr. at 658), and specifically found that Defendant's objection was untimely. (*Id.*)

After the Court broke the jury for lunch, Defendant moved for a mistrial, again on the basis of the exhibit descriptions that had been provided to the jury electronically through JERS, and which mirrored the Government's trial exhibit list. (Trial Tr. at 661-63). Defendant pointed out several examples which he believed were particularly damaging. (*Id.*) The Court denied the motion as untimely, and also noted that the commentary in the exhibit list was consistent with the testimony regarding the exhibit, and not sufficiently pejorative or damaging to the Defendant to justify a motion for mistrial. (*Id.*) Later that day, the jury returned a unanimous verdict convicting Defendant on all counts.

### III. DISCUSSION

#### A. Motion for New Trial

A court may grant a new trial on motion of the defendant "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Fourth Circuit has held that "a trial court 'should exercise its discretion to award a new trial sparingly' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *See United States v. Smith*,

451 F.3d 209, 216-17 (4th Cir. 2006) (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)).

Defendant bases his motion for new trial entirely on the content of the Government's exhibit descriptions submitted to the jury in the JERS exhibit list. These descriptions, he argues, contained extraneous information, and otherwise "directed" the jury to agree with disputed characterizations of the evidence. These descriptions, then, prejudiced Mr. Jones and effectively "directed the verdict" against him. Defendant cites a number of cases (many focusing on juror misconduct) in support of his assertion that a new trial is necessary. *See, e.g.*, *United States v. Lawson*, 677 F.3d 629, 643-51 (4th Cir. 2012) ("[E]xtra record information of which a juror becomes aware is presumed to be prejudicial to a defendant.").

As an initial matter, the Court reasserts its finding that Defendant's objection to the descriptions in the Government's exhibit list was untimely. (*See* Trial Tr. at 658, 661-63). The parties do not dispute that Defendant had the Government's exhibit list in his possession weeks before the trial began; thus he had ample opportunity to view and object to these descriptions. Defendant argues at length that the exhibit lists submitted for trial are different from the exhibit lists uploaded to JERS, evidenced by the fact that the submission process for the two lists are treated differently under this Court's Administrative Order, *see supra* n.1. Indeed, the two lists are formatted differently and serve different purposes; however, the Court agrees with the Government that it is generally the practice in this district that the exhibit descriptions used in the trial exhibit lists are the same as those uploaded to JERS. The Court notes that trial counsel for Defendant is an experienced trial attorney who appears frequently in the Western District, and while he may not have known to an absolute certainty that those same descriptions would be used, he was at least on notice to object if he did not want them presented to the jury.

4

Jones argues more generally that defendants should not be required to "assume what, if anything, the other party will enter into JERS," and that opposing counsel should instead be given a copy of the proposed JERS exhibit list to review, "most likely during the charge conference." (*See* Doc. No. 932 at 13). The Court notes that the parties are, at the time of the charge conference, already in possession of opposing counsel's trial exhibit lists, and are free to object to the descriptions therein, or otherwise object to the descriptions that have been entered into JERS, at any time before the exhibits are submitted to the jury.[2] Defendant's failure to do so here before the case was submitted to the jury renders his objection untimely, and cannot justify a motion for new trial.

Otherwise, the Court reasserts its finding that the descriptions in the JERS list were not prejudicial or sufficiently damaging to justify a new trial, and that they were generally consistent with the testimony regarding the exhibits. (*See* Trial Tr. at 663). Certainly, the descriptions reflected the Government's characterization of some of the admitted exhibits, and in several places were argumentative—employing terms like "bogus," "fraudulent," "purported," and "theft." (*See* Doc. No. 635-1). But these were also the characterizations the Government sought to impress upon the jury at trial, and which were based upon the testimony elicited by the Government. The descriptions, then, were not "extraneous information," as they sought to describe the admitted exhibits based on that testimony.

Defendant makes much of the fact that the JERS list submitted to the jury contained the header "U.S. District Court, Western District of North Carolina," and argues that the jury was led to believe that "the descriptions of documents had effectively been adopted by the Court, and

---

[2] The Court also notes that the deputy clerk typically reviews with counsel, using their respective trial exhibit lists, which exhibits are to be presented to the jury, providing still another opportunity to review and object to the descriptions.

therefore the Court effectively directed the jury to make the findings of fact in those descriptions." (Doc. No. 932 at 4). But each of the descriptions in the JERS list clearly showed that the exhibit was being offered by the Government and, especially given the argumentative nature of some of the descriptions—arguments which mirror those made by the Government during the trial—no reasonable juror could have thought the Court was directing them to make findings of fact based on those descriptions. To the contrary, the Court's instructions made clear what the jury was to consider as evidence:

> It's your duty and your responsibility in this trial to find the facts. You may find those facts from the evidence which has been presented during this trial. The evidence consists only of the testimony of various witnesses who have been called, sworn and testified in your presence, the exhibits which have been admitted into evidence by the Court, and any stipulations of fact made by the parties.

(Trial Tr. at 607). The Court also unequivocally instructed the jury that "[s]tatements, arguments, and questions by lawyers are not evidence." (Trial Tr. at 18). Juries are presumed to follow the Court's instructions. *See, e.g.*, *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985); *United States v. Warner*, 498 F.3d 666, 683 (7th Cir. 2007) ("There is a general presumption that juries follow their instructions . . . This presumption is only overcome if there is an 'overwhelming possibility' that the jury was unable to follow instructions."). Thus, the Court finds that these descriptions were neither prejudicial nor sufficiently damaging to justify a new trial.

Defendant does note one instance in which information that had been excluded by the Court appears to have made its way into the JERS exhibit descriptions. Prior to trial, the Court ruled that evidence with regard to Defendant's failure to file tax returns in 2010 would be admissible, but excluded such evidence relating to prior years. Government exhibit 210, then, only contained information about Defendant's failure to file tax returns in 2010, but the description in the JERS list read "IRS Certification of Lack of Records for 2005-2010." (*See* Doc. No. 635-1). Yet, the

6

jury was explicitly instructed that it was only to consider the evidence in determining the facts, and that only the exhibits and testimony were evidence. Again, juries are presumed to follow the Court's instructions, and the Court's instructions did not allow the jury to consider the descriptions in the JERS list as evidence. The Court also notes that it instructed the jury that the Defendant was not on trial for uncharged crimes (such as tax fraud), and that he could not be convicted based on information relating to such offenses. In light of those instructions, and the fact that the exhibit itself only contained information relating to Defendant's failure to file 2010 tax returns, the Court finds that this description was not sufficiently prejudicial or damaging to justify a new trial. As such, Defendant's motion for new trial will be denied.

### B. Motion for Acquittal

Defendant also moves for a judgment of acquittal notwithstanding the verdict, arguing that the Government did not offer sufficient evidence to sustain the jury's verdict on any count. When considering a motion under Federal Rule of Criminal Procedure 29(c), courts in the Fourth Circuit look to "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996).

The Fourth Circuit has noted that "[a] defendant challenging the sufficiency of the evidence bears 'a heavy burden.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)). The Government is entitled to the benefits of all reasonable inferences that can be drawn from the facts proven. *See United States v.*

*Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Ultimately, the jury's verdict must stand if "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993).

This Court presided over Defendant's trial and observed the abundant evidence presented by the Government. That evidence demonstrated, in painstaking detail, the nature of the alleged conspiracy, as well as Defendant's involvement in it. The evidence addressed the elements of each of the charged offenses, and was more than sufficient to demonstrate that Defendant conspired to violate the RICO statute, committed securities and wire fraud, and conspired to commit money laundering. The Court instructed the jury on the difference between direct and circumstantial evidence, and on the elements of the charged offenses, and the jury returned a verdict of guilty. The Court is fully satisfied that the evidence presented by the Government was such that a reasonable finder of fact could accept it as adequate and sufficient to support a conclusion of the Defendant's guilt beyond a reasonable doubt. For these reasons, and for the additional reasons stated in the Government's briefs on this matter (Doc. Nos. 647 & 951), the Court finds that the jury's decision was supported by substantial evidence, and Defendant's motion for acquittal will be denied.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial (Doc. No. 635) and Motion for Acquittal (Doc. No. 634) are **DENIED**.

**SO ORDERED.**

Signed: July 8, 2015

Graham C. Mullen
United States District Judge